UNITED STATES of America,
Plaintiff,

v.

Herbert A. DANIELS, Defendant.

No. 99–40099–01–DES.

United States District Court,
D. Kansas.

April 5, 2000.

Leslie A. Greathouse, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, Gregory B. Hancks, Kansas City, MO, Thomas J. Kenney, Kutak Rock, Omaha, NE, Alan D. Strasser, Kutak Rock, Washington, DC, for Herbert A. Daniels, defendant.

Richard L. Hathaway, Office of U.S. Attorney, Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

On March 23, 2000, the court held a hearing on ten motions and took all the motions under advisement. There are nine motions currently pending before the court.[1] Defendant filed a Motion for Bill of Particulars (Doc. 42), Motion to Strike (Doc. 44), Motion to Dismiss (Doc. 46), and

---

1. The government's Motion to Take Deposition (Doc. 31) is addressed in a separate written order.

Motion Requesting Pretrial Production of Documents[2] (Doc. 51). The government filed a Motion to Unseal Pleadings, Orders, and Documents (Doc. 28), Motion to Quash Subpoenas Duces Tecum Served on Witness Holdcraft (Docs. 30 and 36), Motion for Discovery (Doc. 40), and Motion to Quash 17(c) Subpoenas (Doc. 52). The court has considered the briefs and oral arguments of both parties and is now prepared to rule.

On January 19, 2000, the grand jury returned a forty-nine count superseding indictment against defendant. Counts 1 to 30 allege health care fraud in violation of Title 18 U.S.C. § 2 and 1347. Counts 31 to 40 allege mail fraud in violation of Title 18 U.S.C. § 2 and 1341. Counts 41 to 49 allege that defendant engaged in monetary transactions in property derived from specified unlawful activity in violation of Title 18 U.S.C. § 2 and 1957.

## I. Plaintiff's Motion to Unseal Pleadings, Orders, and Documents (Doc. 28)

Defendant filed an ex parte motion requesting the court to authorize the issuance of subpoenas duces tecum to Dr. Jacqueline Holdcraft, requiring pretrial production of documents pursuant to Federal Rule of Criminal Procedure 17(c). The court authorized the issuance of the subpoenas and placed the motion and supporting documents under seal. Defendant subsequently served two subpoenas on Dr. Holdcraft.[2] Dr. Holdcraft gave copies of both subpoenas to the government and refused to provide the requested information. The government requests that the court unseal the materials, require the defense to provide notice to the government in the future, order any documents already subpoenaed to be produced before the court for inspection by both parties,

and publish all future materials concerning Rule 17(c) requests.

The issue before this court is whether Rule 17(c) provides for an ex parte application for a subpoena duces tecum to be served on a third party seeking pretrial production of documents. The court did not discover any binding authority on this issue in its research. The court has reviewed the conflicting case law cited by the parties, and finds the detailed opinion of *United States v. Tomison*, 969 F.Supp. 587 (E.D.Cal.1997), which held that Rule 17(c) provides for ex parte application for subpoena duces tecum prior to trial, to be persuasive.

The text of Rule 17(c) does not explicitly address an ex parte application for subpoenas duces tecum produced prior to trial. A fair reading of the text and the policy behind Rule 17(c) reveals the legislative intent to provide for ex parte proceedings. *See Tomison*, 969 F.Supp. 587. For example, the last sentence of Rule 17(c) provides that the court may order production of documents and may permit inspection by the adverse party. "Since the court may permit inspection by the parties of documents produced before trial, it follows that the Rule empowers the court to deny an adverse party the opportunity to inspect the documents." *Tomison*, 969 F.Supp. at 591 (citing *United States v. Florack*, 838 F.Supp. 77, 80 (W.D.N.Y. 1993)). If the court can deny the opposing party access to the information subpoenaed, it follows that the party may make an ex parte application. In addition, Rule 17(c) is "substantially similar" to Federal Rule of Civil Procedure 45(b). Fed. R.Crim.P. 17(c) advisory committee's note. Rule 45(b) provides, "[p]rior notice of any commanded production of documents and things or inspection of premises before trial **shall** be served on each party." Fed. R.Civ.P. 45(b). The use of the word

---

**2.** Defendant served the two subpoenas on Dr. Holdcraft twice. On February 17, 2000, Dr. Holdcraft was served with subpoenas which requested production of the information by February 16, 2000. On February 26, 2000, Dr. Holdcraft was re-served the subpoenas in a timely manner. The subpoenas served on February 26, 2000, are the basis for the Supplemental Motion to Quash (Doc. 36).

"shall" in Rule 45(b) is strong evidence that the drafters of Rule 17(c) contemplated the use of ex parte applications for subpoenas duces tecum when they chose the word "may."

■ There are also strong public policy reasons in favor of an ex parte procedure. The purpose of Rule 17(c) is to "expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Bowman Dairy Co. v. United States,* 341 U.S. 214, 220, 71 S.Ct. 675, 95 L.Ed. 879 (1951). In the absence of an ex parte procedure, a party may wait until trial to request needed information for fear that "[i]f a source of evidence were to be identified before the issuance of a subpoena, the source or the integrity of the evidence might be imperiled," *United States v. Reyes,* 162 F.R.D. 468, 470 (S.D.N.Y.1995), thwarting the purpose of Rule 17(c). Likewise, a fear of disclosing trial strategy may also defeat the purpose of Rule 17(c):

> An interpretation which would require the defendant to divulge his or her theory of the case as a prerequisite for pretrial productions would discourage the defendant from using the Rule in the first place. Indeed, requiring noticed motions would tend to encourage the defendant to wait until trial to seek production of documents and evidence. . . . Thus, requiring a defendant to apply for the subpoena duces tecum by noticed motion could defeat the Rule's goal of speed and efficiency of trial.

*Tomison,* 969 F.Supp. at 592–93. A Rule 17(c) subpoena will only be issued if the information sought is relevant, admissible, and specifically identified. *United States v. Nixon,* 418 U.S. 683, 700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). "A party may have to detail its trial strategy or witness list in order to convince a court that the subpoena satisfies the Nixon standards." *Reyes,* 162 F.R.D. at 470. "Forcing any defendant to confront the choice between issuing a pre-trial subpoena duces tecum and disclosing his defense to the govern-

ment places an unconstitutional limitation on the defendant's right to compulsory process." *United States v. Beckford,* 964 F.Supp. 1010, 1027 (E.D.Va.1997).

■ The court does not feel the arguments advanced by the government are sufficient to impede a defendant's right to compulsory process. The government first argues that notice is required to insure that Rule 17(c) is not used as a discovery device. However, the court is responsible for and fully capable of determining whether the subpoena is being used as a discovery device without the assistance of opposing counsel. *Tomison,* 969 F.Supp. at 594. The government next argues that notice will insure open access to the courts. "The right of access is presumptive and not absolute: it may be outweighed when the court finds that disclosure is necessary to preserve overriding rights of criminal defendants." *Id.* at 595. Although these arguments have merit, the right of the criminal defendant to compulsory process and protection of trial strategy outweighs these concerns. Therefore, the court interprets Rule 17(c) as providing for an ex parte application for a subpoena duces tecum seeking pretrial production of documents to be issued to a third party. Although ex parte proceedings are not favored, they may be necessary under the circumstances discussed above.

A determination of whether an ex parte application is necessary must be evaluated on a case by case basis. The court has reviewed the pleadings filed under seal in this case and finds they contain information that is considered "trial strategy." Therefore, the court will not unseal these documents or its orders. Because the decision to place Rule 17(c) requests under seal is on a case by case basis, the government's request that the court require the defense to provide notice to the government in the future and that the Court publish all future motions and orders concerning Rule 17(c) requests is denied.

The government has also requested that the court order any documents already subpoenaed to be produced before the court for inspection by both parties. Because the government has copies of the subpoenas issued to Dr. Holdcraft, there is no need for secrecy as to the information sought. Therefore, the court orders defendant to present all documents produced by Dr. Holdcraft in response to the subpoenas for inspection by the government.

## II. Plaintiff's Motion to Quash Subpoenas Duces Tecum Served on Witness Holdcraft (Docs. 30 and 36)

The government has moved to quash the subpoenas served on Dr. Holdcraft because she either does not have these records, having provided them to the government, the documents do not exist, or they are already in possession of the defense. Defendant argues that the government does not have standing to object to the subpoenas.

"A party only has standing to move to quash the subpoena issued to another when the subpoena infringes upon the movant's legitimate interests." *Tomison,* 969 F.Supp. at 596 (citing *United States v. Raineri,* 670 F.2d 702, 712 (7th Cir.1982) and *Ponsford v. United States,* 771 F.2d 1305, 1308 (9th Cir.1985)). The government will often lack standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest in the subpoenaed material, or some other interest in the subpoenaed material. *Beckford,* 964 F.Supp. at 1023.

■ The government does not argue, nor has it shown, that it has standing to challenge the subpoenas. The government has not shown that the subpoenas are unreasonable or oppressive, as applied to the government. *See* Fed.R.Crim.P. 17(c) (providing "[t]he court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or

oppressive."); *Nixon,* 418 U.S. at 698, 94 S.Ct. 3090 ("A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive' but not otherwise."). Nor has the government shown that the subpoenas, returnable before trial, will delay the trial. *See Tomison,* 969 F.Supp. at 596 ("a subpoena returnable before trial will avoid delay in the government's prosecution of the case"). Because the government has not shown it has standing, the government's motion to quash is denied.

If Dr. Holdcraft no longer has the items requested by the subpoenas in her possession, as the government claims, then she is in compliance with the subpoenas. However, if Dr. Holdcraft has the information sought and objects to providing it, she needs to make a proper objection to defense counsel rather than to the United States Attorney.[3]

## III. Plaintiff's Motion for Discovery (Doc. 40)

The government's motion for discovery seeks items from defendant under Rule 16, Rule 17, and Rule 26.2. Under Rule 16, the government seeks books, papers, documents, photographs, tangible items, physical and mental exam results, test results, materials prepared by a witness relating to the witness's testimony, and expert witness information and reports that are within the possession, custody, or control of the defendant which defendant intends to introduce as evidence in chief at the trial. Under Rule 17, the government seeks all books, papers, documents or other objects produced in response to any current or future subpoenas issued under Rule 17(c). Finally, under Rule 26.2, the government seeks all witness statements. If the court does not require immediate disclosure of the information, the government requests

---

**3.** Objections to subpoenas are customarily made by letter served on the party issuing the subpoena. *See Tuite v. Henry,* 98 F.3d 1411, 1416 (D.C.Cir.1996) (discussing objections under Fed.R.Civ.P. 45(c)(2)(B)).

the court to order defendant to comply within at least three weeks of trial.

■■■ Rules 16 and 26.2 provide for reciprocal discovery. Rule 16 provides, "upon compliance with such request by the government, the defendant on request of the government, shall permit the government to inspect and copy or photograph books, paper, documents ... which the defendant intends to introduce as evidence in chief at the trial." Fed.R.Crim.P. 16(b)(1)(A). The government argues that it has provided discovery and has tried to provide additional discovery in the last few weeks, but defendant has failed to review the discovery. Upon partial compliance, the court can order the defendant to provide reciprocal discovery. *See United States v. Lin Lyn Trading, Ltd.*, 911 F.Supp. 494, 497 (D.Utah 1996).

Defendant argues that he has no duty under Rules 16 and 26.2 until after the government fully complies with his discovery requests and that the government has not complied. *See United States v. McVeigh*, 954 F.Supp. 1441, 1449 (D.Colo. 1997) (holding compliance with a Rule 16 request triggers the defense obligation). Defendant also argues that the motion is premature because he has not determined what documents or witnesses he will use at trial. It is clear to the court that defendant is not in a position to disclose what documents and witnesses he will use at trial under Rules 16 or 26.2. Therefore, the parties are to discuss the discovery schedule and set a date for discovery to be completed, no later than three weeks before trial. The parties are to notify the court of the date selected.

Rule 17(c) permits the court to make information obtained by subpoena duces tecum available to both parties. Because the government has received copies of the subpoenas issued to Dr. Holdcraft, there is no need for secrecy as to the requested information. The court grants defendant's motion to the extent it requests to view information obtained by the subpoenas issued to Dr. Holdcraft. As discussed above, ex parte applications for subpoena duces tecum are appropriate under some circumstances and Rule 17(c) provides that the court may permit inspection of subpoenaed material at its discretion. Therefore, defendant's request for such information is denied. The court will rule on those requests on a case by case basis.

## IV. Defendant's Motion for Bill of Particulars (Doc. 42)

Defendant argues that a bill of particulars is necessary in this case. The motion generally seeks the following information:

1. A definition of "Medical Necessity" and what patients were subjected to surgeries that were not a medical necessity;

2. A definition of "Informed Consent" and what patients the defendant allegedly failed to get informed consent from;

3. Clarification of when the defendant's "Scheme" took place; [4]

4. Clarification of how the government is charging the defendant as an aider and abettor; [5]

5. Identification of what medical records the defendant is charged with falsifying;

6. Identification of all property which was obtained by fraud;

7. Identification of all fraudulent bills, documents or medical records;

8. Clarification of what surgeries were not performed or were not medically necessary;

---

4. The court addresses this concern by granting defendant's motion to strike as to Dr. Holdcraft's investigation.

5. The government does not have to specify whether it is charging defendant as a principal or aider and abettor. *See* the court's discussion regarding defendant's motion to strike.

9. Identification of which patients suffered severe bodily injury;

10. Clarification of whether the defendant actually did the acts alleged in the indictment;

11. Specific information regarding the general charging allegations of Health Care Fraud;

12. What specific acts were fraudulent in connection with the counts relating to surgeries actually performed;

13. Specific information about what acts were improper in the cases where no surgery was performed;

14. Specific information relating to the Mail Fraud counts; and

15. Specific information relating to the Money Laundering counts.

■ A bill of particulars is not a discovery device. Instead, it is a device designed to "inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir.1988) (quoting *United States v. Cole*, 755 F.2d 748, 760 (11th Cir.1985)). The decision to grant a bill of particulars is within the broad discretion of the trial court. *Id.* In order to prevail on a motion for a bill of particulars, a defendant must show with specificity how his case would be prejudiced without the bill. *United States v. Sturmoski*, 971 F.2d 452, 460 (10th Cir.1992).

In addition, "[a] bill of particulars is not required when information necessary for a defendant's defense can be obtained through 'some other satisfactory form.'" *United States v. Canino*, 949 F.2d 928, 949 (7th Cir.1991). "The nature and operations of the 'open-file' policy is an adequate 'satisfactory form' of information retrieval, making the bill of particulars unnecessary." *Id. See also Sturmoski*, 971 F.2d at 460 ("Given the government's full disclo-

sure and Sturmoski's failure to show that he was 'actually surprised at trial and thereby incurred prejudice to his substantial rights,' the district court acted appropriately in denying his motion and certainly did not abuse its discretion.").

In this case, the government has provided extensive discovery to defendant, including the government's exhibits and Jencks Act materials. The indictment itself is specific. The health care fraud counts list the specific dates, patients, insurance companies, procedures at issue, and whether the procedures were performed. The mail fraud counts provide the specific dates, what was mailed and the recipient of the mail. The money laundering counts provide the withdrawal date, amount of money, and financial institution. The combination of discovery and the indictment will allow defendant to identify the operative records and other documents that the government will introduce against him. Although defendant would like the court to identify the specifics, such as which procedures were medically unnecessary, what patients did not give informed consent, and the specific words that are allegedly false and misleading, that level of detail is not required. *See United States v. Torres*, 901 F.2d 205, 234 (2d Cir.1990); *United States v. Lauersen*, No. 98–CR–1134, 1999 WL 440619 (S.D.N.Y.1999) "The defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case." *Dunn*, 841 F.2d at 1030 (quoting *United States v. Giese*, 597 F.2d 1170, 1181 (9th Cir.1979)).

■ The indictment adequately sets out the elements of the crimes charged and sufficiently defines the charges to allow defendant to prepare his defense, avoid surprise, and prevent double jeopardy concerns. Defendant has not shown he would suffer prejudice absent a bill of particulars, particularly in light of the extensive discovery provided by the government. Defendant is attempting to use the bill of

particulars as a discovery device. Accordingly, defendant's motion for a bill of particulars is denied.

## V. Defendant's Motion to Strike (Doc. 44)

■ Defendant requests that the court enter an order striking certain irrelevant and prejudicial information contained in the indictment. The court has the authority to strike surplusage from an indictment under Rule 7(d). Fed.R.Crim.P. 7(d). Courts may strike language only if it is both clearly irrelevant to the charges and inflammatory or prejudicial to the defendant. *United States v. Collins,* 920 F.2d 619, 631 (10th Cir.1990). Although striking information from an indictment is left to the discretion of the court, it is generally disfavored. *United States v. Jackson,* 850 F.Supp. 1481, 1506 (D.Kan.1994).

■ The first type of information defendant seeks to have stricken from the indictment deals with the investigation of his former partner, Dr. Holdcraft. The indictment sets out facts concerning what information Dr. Holdcraft found that led to the government's involvement in this case. The court agrees that none of the information contained in this section of the indictment relates to any of the specific counts of fraud. In fact, the earliest act for which the defendant is charged in the indictment took place in May 1995. Dr. Holdcraft's investigation ended in 1992, leaving a three year time span between her investigation and the charges. This information is not directly relevant to any of the charged conduct. In addition, the court agrees that this information is highly prejudicial. This type of information "could be taken by the jury as objective indications of fault" as to the charged conduct. *United States v. Poindexter,* 725 F.Supp. 13, 36 (D.C.Cir.1989). Because this information is irrelevant and prejudicial, the court grants defendant's motion to strike as to paragraphs fourteen (14) through eighteen (18), concerning Dr. Holdcraft's investigation.

■ The next category of information concerns medical matters such as medical standards, obligations of surgeons, and information concerning insurance claims forms. The government argues that this information will show that the defendant understands the standards of care for his profession and intentionally circumvents these standards by falsifying patient records. These paragraphs contain information which is relevant to defendant's intent and motive in making the false statements. *See United States v. Gressett,* 773 F.Supp. 270, 274 (D.Kan.1991). Such information will directly help the jury to place the defendant's conduct and false statements in context. "It is proper for the indictment to contain relevant background information." *See United States v. Hill,* 799 F.Supp. 86, 89 (D.Kan.1992). The court does not believe this information is prejudicial or improper.

■ Defendant also argues that the indictment misstates the law of informed consent. The superseding indictment, dated January 19, 2000, states:

> Under the doctrine of informed consent a doctor has the duty to inform the patient of both the complications of, and the alternatives to, proposed medical procedures involving inherent risks of collateral injury. A doctor also has the duty to explain to the patient any procedures to be undertaken. The patient should then be allowed to weigh the associated risks according to the patient's own values and choose the procedure the patient finds most acceptable, or to elect none at all.

Para. 29 (quoted language followed by an example). In Kansas, "[t]he duty of the physician to disclose, however, is limited to those disclosures which a reasonable medical practitioner would make under the same or similar circumstances." *Natanson v. Kline,* 186 Kan. 393, 350 P.2d 1093, 1106 (1960). The disclosure necessary depends upon the facts and circumstances of each case. *Funke v. Fieldman,* 212 Kan.

524, 512 P.2d 539, 546 (1973). The Kansas pattern jury instruction on informed consent provides, "[t]he duty of the [doctor] to disclose is limited to those disclosures which a [doctor] would reasonably make under the same or similar circumstances." P.I.K.3d § 123.14. The court agrees with defendant that the definition of informed consent in the indictment is grossly oversimplified and likely to prejudice the jury. In addition, an improper standard can hardly be relevant. Therefore, defendant's request that the court strike paragraph twenty-nine (29), concerning informed consent, is granted.

■■■ The next class of information the defendant wishes to strike are hypothetical allegations. Paragraph 31 contains sentences which state what the defendant "would" do and fails to identify a specific patient. Some of the sentences provide an example, listing a specific patient. Other sentences refer to patients rather than patient. One in particular, refers to patients suffering from serious bodily injury, when only one person, Michelle U., is specifically identified in the indictment as suffering severe bodily injury. The court flatly rejects defendant's semantic argument that use of the word "would" means the grand jury did not find that defendant actually acted. The court acknowledges that the use of the word "patient(s)" and the phrase "for example" is inconsistent throughout paragraph 31. However, not all evidentiary detail must be set forth in the indictment. Defendant has not shown that he will be prejudiced by this discrepancy.

■■■ The final class of information the defendant seeks to strike is all reference to 18 U.S.C. § 2, which criminalizes aiding and abetting. Defendant argues that the indictment does not allege that he aided or abetted anyone, nor does the indictment discuss whether he acted as a principal or accessory. Section 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal;. (b) Whoever wilfully causes an act to be done which if directly performed by him or another would be an offense against the United States is punishable as a principal.

18 U.S.C. § 2. Section 2 simply abolishes the distinction between principal and accessory. One charged as a principal can be convicted on evidence merely showing he acted as an accessory. *United States v. Walker,* 621 F.2d 163, 166 (5th Cir.1980) A defendant can be found guilty under Section 2 even if no reference to the defendant's role as an aider and abettor is found in the indictment. *United States v. Salazar,* 983 F.2d 778, 781 (7th Cir.1993); *United States v. Bommarito,* 524 F.2d 140, 145 (2d Cir.1975). Although it is not necessary to include Section 2 in the indictment, it is not improper to include Section 2 in the indictment to place the defendant on notice that he will subject to it. Defendant's request to strike this language is denied.

Because defendant has shown irrelevance and prejudice, paragraphs fourteen (14) through eighteen (18), concerning Dr. Holdcraft's investigation, and paragraph twenty-nine (29), concerning informed consent, will be stricken from the superseding indictment. Defendant's remaining requests are denied.

## VI. Defendant's Motion to Dismiss (Doc. 46)

Defendant has moved to dismiss the indictment on the following grounds: (1) the indictment is unconstitutionally vague and fails to give him proper notice of the charges against him, (2) the health care fraud counts fail to identify the material false statements, (3) the indictment fails to allege a scheme to defraud, (4) the indictment fails to allege honest services fraud, (5) the indictment fails to allege use of the mails in furtherance of a scheme to defraud, (6) several individual fraud counts are insufficient as a matter of law, and (7)

the health care fraud counts fail to allege an essential element.

 An indictment is sufficient if it contains the elements of the offense and sufficiently appraises the defendant of what he must be prepared to meet, and shows the defendant to what extent he may plead double jeopardy. *Russell v. United States,* 369 U.S. 749, 764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). The indictment must descend to the particulars and present "a statement of the facts and circumstances as will inform the accused of the specific offense ... with which he is charged." *Id.* However, it does not need to state the details of the evidence upon which the case will rest. *United States v. Radetsky,* 535 F.2d 556, 565 (10th Cir. 1976). The test for determining whether an indictment is sufficient is not whether it could be more definite or certain. *See United States v. Salazar,* 720 F.2d 1482, 1487 (10th Cir.1983). Indictment sufficiency should be judged by "practical rather than technical considerations." *United States v. Dunn,* 841 F.2d 1026, 1029 (10th Cir.1988). "The indictment should be read as a whole and interpreted in a common sense manner." *United States v. Kilpatrick,* 821 F.2d 1456, 1462 (10th Cir.1987).

 The indictment, while lengthy and not laid out in normal fashion, adequately sets forth the grand jury's charges and the essential facts and general circumstances underlying them. *Radetsky,* 535 F.2d at 565. The indictment in paragraph 31 sets out the scheme to defraud in its entirety. The indictment then proceeds to state the generic language of the fraud statutes and, in chart form, identify in each count the specific factual situations at issue. As to the health care fraud counts, the chart provides the specific dates, patients, insurance companies, procedures at issue, and whether the procedures were performed. As to the mail fraud counts, the chart provides the specific dates, what was mailed, and who was the recipient. As to the monetary transactions in property derived from specified unlawful activity, the chart provides the withdrawal date, amount of money, and financial institution. The indictment, read in its entirety, is sufficient to notify defendant of the charges against him.

Contrary to defendant's claims, the indictment contains all of the necessary elements of the offenses charged and gives enough specificity to survive a constitutional challenge. An indictment is held only to minimal constitutional standards. *See United States v. Edmonson,* 962 F.2d 1535, 1541 (10th Cir.1992) (citing *United States v. Perkins,* 748 F.2d 1519 (11th Cir.1984)). Defendant has presented additional arguments, which are not specifically addressed by the court. The court has considered these arguments and finds they lack merit. After considering all defendant's claims, the court finds the indictment is sufficient. Accordingly, defendant's motion to dismiss the indictment is denied.

**VII. Defendant's Motion Requesting Pretrial Production of Documents Pursuant to Subpoenas Duces Tecum (Doc. 51)**

 The defendant seeks seventy-two (72) subpoenas regarding thirty-seven (37) patients from various doctors, medical institutions, and insurance companies. Under *Nixon,* a defendant seeking a subpoena duces tecum must demonstrate that the information sought is relevant, admissible, and specific. *Nixon,* 418 U.S. at 698, 94 S.Ct. 3090. Rule 17(c) is not to be used as a "fishing expedition." *Id.*

Defendant's stated reason for needing this information is that the medical and billing records provided by the government are incomplete and insufficient to allow him to prepare his defense. Defendant does not explain how the information provided by the government is insufficient, or what specific information is lacking. The court finds it noteworthy that at the motions hearing, defense counsel admitted that they had spent less than one day

reviewing over seventy boxes of discovery provided by the government.

In addition, the requested information is not limited to any relevant time frame. In defendant's motion, he states, "Although the government has provided the Defendant with some selected information from the patient-witnesses' medical charts, those documents do not even approximate the full medical record of the patients." If the medical records provided by the government are lacking relevant information, the defendant must state what additional information he seeks, why such information is relevant, and provide the court with a time frame. Obviously, the defendant does not need each patient's entire medical record from birth to the present date to defend against charges concerning specific medical procedures during a specific time period.

The requested subpoenas are extremely broad. Because defendant failed to meet the *Nixon* requirements, his motion is denied.

## VIII. Plaintiff's Motion to Quash 17(c) Subpoenas (Doc. 52)

Because the court denied defendant's Motion Requesting Pretrial Production of Documents Pursuant to Subpoenas Duces Tecum (Doc. 51), the government's motion is denied as moot.

**IT IS THEREFORE BY THE COURT ORDERED** that the government's Motion to Unseal Pleadings, Orders, and Documents (Doc. 28) is denied in part and granted in part. The government's request to unseal documents, request that the court require the defense to provide notice to the government, and request that the Court publish all future motions and orders concerning Rule 17(c) requests are denied. The government's request that any documents already subpoenaed to be produced before the court for inspection by both parties is granted.

**IT IS FURTHER BY THE COURT ORDERED** that the government's Motion to Quash Subpoenas Duces Tecum Served on Witness Holdcraft (Docs. 30 and 36) is denied.

**IT IS FURTHER BY THE COURT ORDERED** that the government's Motion for Discovery (Doc. 40) is granted in part and denied in part. As to the government's request for Rule 16 and 26.2 discovery, the parties are to meet and select a date, no later than three weeks before trial, for discovery to be completed. When the parties have selected a date, they are to notify the court. As to Rule 17(c), the government's request to view information obtained by the subpoena duces tecum issued to Dr. Holdcraft is granted. The government's request to view information sought by future subpoena duces tecum is denied. The court will address such requests on a case by case basis.

**IT IS FURTHER BY THE COURT ORDERED** that the defendant's Motion for Bill of Particulars (Doc. 42) is denied.

**IT IS FURTHER BY THE COURT ORDERED** that the defendant's Motion to Strike (Doc. 44) is granted in part and denied in part. Defendant's request that the court strike paragraphs fourteen (14) through eighteen (18) regarding Dr. Holdcraft's investigation is granted. Defendant's request that the court strike paragraph twenty-nine (29) concerning informed consent is granted. The remaining requests to strike are denied.

**IT IS FURTHER BY THE COURT ORDERED** that the defendant's Motion to Dismiss (Doc. 46) is denied.

**IT IS FURTHER BY THE COURT ORDERED** that the defendant's Motion Requesting Pretrial Production of Documents (Doc. 51) is denied.

**IT IS FURTHER BY THE COURT ORDERED** that the government's Motion to Quash 17(c) Subpoenas (Doc. 52) is denied as moot.